**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**MELVIN COCHRAN,**

        **Plaintiff,**

**v.**                                      **Case No. 2:17-cv-04312**

**DAVID BALLARD; WARDEN JIM
RUBENSTEIN; and LOLITA BUTCHER,**

        **Defendants.**

**PROPOSED FINDINGS OF FACT and RECOMMENDATIONS**

In November 2017, Plaintiff, Melvin Cochran ("Plaintiff"), proceeding *pro se* and incarcerated at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia, filed a complaint pursuant to 42 U.S.C. § 1983 against David Ballard, the Warden of MOCC; Lolita Butcher, the Acting West Virginia Division of Corrections and Rehabilitation[1] ("DOC") Commissioner; and Jim Rubenstein, the former DOC Commissioner. In the complaint, Plaintiff alleges that his constitutional right to marry under the First and Fourteenth Amendments has been violated by Defendants. (ECF No. 1 at 8). Pending before the court is Defendants' Motion to Dismiss the Complaint. (ECF No. 38). Plaintiff has filed a Response in Opposition to Defendants' Motion, (ECF No. 43). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order is referred to the undersigned United States Magistrate

---

[1] Since Plaintiff filed his lawsuit, the West Virginia Division of Corrections has been renamed as the West Virginia Division of Corrections and Rehabilitation.

1

Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 38), be **GRANTED** as Plaintiff's claims are now moot; that the complaint, (ECF No. 1), be **DISMISSED**, with prejudice; and that this action be removed from the docket of the court.

## I.    <u>Relevant Facts and Procedural History</u>

Plaintiff filed a complaint in November 2017, alleging that he has been repeatedly denied authorization to marry Sandra Lawrence, a private citizen. (ECF No. 1 at 8). Plaintiff and Ms. Lawrence met while she was employed as a Chaplain at MOCC. (*Id.*). Plaintiff states that he and Ms. Lawrence developed a "strong spiritual bond" and friendship through their shared beliefs and faith. (*Id.* at 9). Ms. Lawrence later sent Plaintiff a money order for $50, in violation of institutional rules, which led to Ms. Lawrence's termination and Plaintiff's placement in segregation. (*Id.* at 8). Plaintiff and Ms. Lawrence continued their relationship after her termination through correspondence. (*Id.* at 9).

Beginning in 2015 and continuing until early 2016, Ms. Lawrence sought approval for visitation with Plaintiff, but her requests were refused due to a DOC policy, which states that employees and former employees are not permitted to visit inmates. (ECF Nos. 2-1, 2-3, 2-4, 2-6, 2-7). In February 2016, Ms. Lawrence officially, but unsuccessfully, requested permission from Defendant Ballard to marry Plaintiff. (ECF No. 2-8). Both Plaintiff and Ms. Lawrence continued to seek approval for their marriage until May 2017. (ECF Nos. 2-12 at 3, 2-25 at 1). Their requests were repeatedly denied. (ECF Nos. 2-9, 2-13, 2-25).

Plaintiff asserts that inmate marriages are governed by DOC Policy Directive 507.00 which states in relevant part:

B.   An inmate's request to marry shall be approved provided:

1. The inmate is legally eligible to marry.

2. The intended spouse has verified, in writing, an intention to marry the inmate and is legally eligible to do so.

3. The marriage poses no threat to institution/facility/center security, good order or public safety.

(ECF No. 1 at 10). Plaintiff alleges that he was told by prison staff that his requests to marry Ms. Lawrence were denied due to Operating Procedure 5.13, which mandates that:

[T]he intended spouse must meet all of the same eligibility criteria requirements applicable to all visitors as outlined in DOC Policy Directive 505.03.

(*Id.* at 13). DOC Policy Directive 505.03, however, contains the following exclusionary clause that applies to Ms. Lawrence:

Employees and ex-employees, volunteers and ex-volunteers, are not permitted to visit with inmates.

(*Id.*). Plaintiff argues that Defendants' repeated refusal to grant him authorization to marry Ms. Lawrence violates his fundamental right of marriage guaranteed by the United States Constitution. (*Id.* at 14). Plaintiff contends that the marriage could be accomplished via a one-time visit for the purpose of the ceremony and, thus, would not require MOCC to extend full visitor privileges to Ms. Lawrence. (*Id.* at 16). For relief, Plaintiff requests that this Court issue a declaratory judgment stating that Defendants have violated Plaintiff's rights under the First and Fourteenth Amendments; issue an injunction ordering Defendants to begin working with Plaintiff to develop a procedure that will allow Plaintiff and Ms. Lawrence to marry while maintaining valid security

3

measures; order an award of compensatory and punitive damages that the Court deems fit and proper; and grant any other relief to which Plaintiff is entitled. (*Id.* at 16-17).

In August 2018, Defendants filed a Motion for Judgment on the Pleadings and a supporting memorandum. (ECF Nos. 23, 24). Defendants argued that allowing Plaintiff to marry Ms. Lawrence would pose a security risk as she had exhibited a tendency to break prison rules in the past, and is a former prison employee, meaning she retained knowledge of prison security procedures. (ECF No. 24 at 8). Defendants additionally argued they were entitled to qualified immunity. (*Id.* at 10-12).

In September 2018, Plaintiff filed a Response in Opposition to Defendants' Motion for Judgment on the Pleadings. (ECF No. 28). In the response, Plaintiff contended that Defendants' fear of security risks due to Ms. Lawrence's past violation of prison regulations and status as a former employee was "unreasonable" and an "exaggerated response." (*Id.* at 11). Plaintiff claimed that Defendants' security concerns could be alleviated by restricting Ms. Lawrence to a one-time supervised visit solely for the marriage ceremony. (*Id.* at 13-14). In October 2018, Defendants filed a Reply to Plaintiff's Response in Opposition reiterating their arguments for dismissal. (ECF No. 30).

On November 9, 2018, the undersigned issued Proposed Findings of Fact and Recommendations ("PF&R") recommending that Defendants' Motion to Dismiss be granted in part and denied in part. (ECF No. 31). The PF&R recommended that Defendants' request for dismissal be granted as to Plaintiff's claims for monetary compensation as Defendants were entitled to qualified immunity. (*Id.* at 27). In regard to Plaintiff's claims for prospective relief, however, the undersigned found that the doctrine of qualified immunity did not apply, and that Plaintiff's complaint stated a claim sufficient to survive a motion to dismiss on the pleadings. (*Id.* at 22, 25). Accordingly, the PF&R

recommended that Defendants' motion to dismiss should be granted as to Plaintiff's demand for compensatory damages, but denied as to his claim for prospective relief. (*Id.* at 27).

On November 27, 2018, finding that no objections had been filed, the presiding District Judge adopted and incorporated the PF&R in its entirety. (ECF No. 32). On November 29, 2018, Plaintiff sent a letter to the Clerk of the Court stating that he had never received the PF&R, and, consequently, had not been afforded the opportunity to file any objections. (ECF No. 33 at 1). On December 4, 2018, the presiding District Judge vacated its earlier adoption of the PF&R to allow Plaintiff additional time to object. (ECF No. 34).

Meanwhile, on December 3, 2018, counsel for Defendants sent Plaintiff a letter informing him that the Commissioner of the DOC had reconsidered Plaintiff's request to marry Ms. Lawrence. (ECF No. 38-1 at 1). The Commissioner, upon reconsideration, granted Plaintiff's request for marriage and informed Plaintiff he was "permit[ed] a special one-time visit for the sole purpose of completing the marriage process." (*Id.*). Counsel for Defendants told Plaintiff it would still be his responsibility "to comply with [the] marriage procedures outlined in Division of Corrections Policy Directive 507.00 and Operational Procedure #5.13." (*Id.*). Counsel attached the relevant DOC policies and procedures with the letter. (*Id.* at 2-4).

On December 6, 2018, Plaintiff responded to the letter. (ECF No. 38-2). Plaintiff inquired if, pursuant to the approval of their request by the Commissioner, it was necessary for him and Ms. Lawrence to resubmit their previous application for marriage. (*Id.* at 2). Plaintiff expressed skepticism over the sincerity of the Commissioner's approval, questioning whether it was truly made in "good faith." (*Id.*). Plaintiff

additionally queried whether, in completing the marriage process, he and Ms. Lawrence would encounter "some new issue that was not previously made an issue?" (*Id.*).

On December 10, 2018, Plaintiff sent a second letter to Defendants. (ECF No. 38-3). In the letter, Plaintiff asked whether Defendants' approval of Plaintiff's request to marry was "still active," in light of this Court's December 4, 2018 order vacating its earlier adoption of the PF&R. (*Id.* at 2). If the approval was still valid, Plaintiff again asked that Defendants respond to his concerns articulated in the earlier letter, and expressed hope that "these matters may be finalized and we may proceed with our lives." (*Id.*).

On December 14, 2018, Defendants, through counsel, replied to Plaintiff's letters. (ECF No. 38-4). Defendants informed Plaintiff that, notwithstanding this Court's order vacating its earlier adoption of the PF&R, the Commissioner had not revoked the approval of Plaintiff's marriage request. (*Id.* at 2). Defendants told Plaintiff that as his previously submitted request for marriage had been approved by the Commissioner, he and Ms. Lawrence had completed step one of the four-step prison marriage procedure as "outlined in Division of Corrections Policy Directive 507.00 and Operational Procedure #5.13," and it would not be necessary to re-submit a written request for marriage. (*Id.* at 1). Defendants further apprised Plaintiff that he now bore the responsibility of completing the application process in accordance with the generally applicable DOC policies governing prison marriage, and following his completion of those requirements, he and Ms. Lawrence could "seek final approval via a written request to the Warden as outlined in Operational Procedure #5.13 Paragraph V. Procedure section B." (*Id.*). Defendants assured Plaintiff that the DOC had "approved your request in good faith and, assuming you and Ms. Lawrence comply with the remaining requirements, your marriage request will be fulfilled." (*Id.* at 2). Plaintiff was told to direct any questions he had regarding the

marriage procedures to his Unit Manager. (*Id.*). On December 27, 2018, this Court entered an Order again adopting and incorporating the PF&R in its entirety as no party had objected to its findings. (ECF No. 35).

On January 2, 2019, the undersigned entered a scheduling order, setting dates for discovery. (ECF No. 36). On January 17, 2019, Plaintiff sent Defendants a letter inquiring if they sought any information from Plaintiff with respect to the scheduled initial disclosures. (ECF No. 44-1 at 1). Plaintiff further stated, "[f]rom the onset I have made what I seek abundantly clear, and that is that my wife-to-be Sandra Lawrence and myself be permitted to marry without impediment." (*Id.*). Given that fact, Plaintiff asked if Defendants wished "to see this matter through to completion," or if they would prefer to meet with Plaintiff and Ms. Lawrence in order to "start honest discussion in an attempt to find some common ground upon which all parties involved might find a resolution that all might find palatable and finalize these matters?" (*Id.* at 2).

Defendants responded on January 26, 2019. (*Id.* at 3). Defendants first informed Plaintiff that the scheduled initial disclosures were required by the Federal Rules of Civil Procedure, and Defendants could not agree to waive these disclosures. (*Id.*). Defendants further stated "[r]egarding your invitation to discuss a resolution or settlement of this matter, we decline." (*Id.*). Defendants told Plaintiff that following the adoption of the PF&R recommending dismissal of Plaintiff's compensatory claims, the only relief available to Plaintiff was an order directing Defendants to allow Plaintiff to marry Ms. Lawrence. (*Id.*). Since Defendants had already granted Plaintiff that relief, Defendants advised Plaintiff that his case was now moot, and Defendants were filing a contemporaneous motion to dismiss on those grounds. (*Id.* at 4).

True to their word, Defendants filed a Motion to Dismiss Complaint on January

26, 2019. (ECF No. 38). In the supporting memorandum, Defendants argue that they have now approved Plaintiff's request to marry Ms. Lawrence and granted permission for Ms. Lawrence to make a one-time visit to the prison in order to complete the marriage process; thus, Plaintiff has received all of the relief to which he is entitled, rendering his complaint moot. (ECF No. 39 at 6). Defendants assert that Plaintiff's request for marriage has been "expressly approved" and "Plaintiff need only follow the same procedural steps required under the applicable operational procedure as every other inmate" in order to complete his marriage with Ms. Lawrence. (*Id.*). Accordingly, Defendants contend that "no present, live controversy exists, and any additional prospective relief would amount to an advisory opinion." (*Id.*).  Defendants ask this Court to dismiss the complaint. (*Id.* at 7).

On February 12, 2019, this Court filed an Order advising Plaintiff that Defendants had filed a motion to dismiss alleging that he had been granted the relief sought and notifying Plaintiff that he had a right to respond in opposition to the motion to dismiss. (ECF No. 40 at 1). On March 7, 2019, Plaintiff filed a Motion requesting production of the transcript of the status conference hearing held on August 28, 2018. (ECF No. 41 at 2). On March 25, 2019, the undersigned issued an Order that, in light of the pending motion to dismiss for mootness, denied Plaintiff's request for a transcript. (ECF No. 42 at 1). Plaintiff was advised that what was currently relevant to his case was whether his claim had been rendered moot by Defendants' acceptance of his marriage request. (*Id.*). Plaintiff was ordered to file a response to Defendants' motion to dismiss, or risk having its factual allegations accepted as true. (*Id.* at 1-2).

On April 15, 2019, Plaintiff submitted a Response in Opposition to Defendants' Motion to Dismiss, as well as a supporting Memorandum. (ECF Nos. 43, 44). In the

response, Plaintiff first restates his argument regarding the unconstitutionality of Defendants' initial decisions denying his marriage requests. (ECF No. 44 at 1-6). Plaintiff next asserts that his claim is not mooted by Defendants' acceptance of his marriage requests. (*Id.* at 9). Plaintiff believes that Defendants are attempting to "misguide" this Court by suggesting that his claim has been mooted by the approval of his marriage request. (*Id.* at 10). Plaintiff contends that he "did not limit the scope of the relief sought to merely being able to marry Ms. Lawrence." (*Id.*). This is so, Plaintiff believes, because he made "clear arguments in his complaint that Defendant[s'] had violated their duties" by rejecting his marriage request in violation of DOC polices. (*Id.*).

Plaintiff further argues that in his complaint he sought the following relief in addition to approval of his marriage request, asking this Court to:

A. Issue a declaratory [j]udgment stating that:

1. The actions of Defendant's Ballard, Rubenstein, and Butcher, ... in intentionally and without justification denying the repeated requests to marry and for authorization for such which were issued by Ms. Lawrence and Plaintiff Cochran[.]

2. The willful and intentional actions of Defendant Ballard, in abusing his discretion when acting in contravention to the mandates of WVDOC PD#507.00, violated the operational standards under which he must function, violated the required duty parameters of his position, and in doing so, violated the right to associate, and the protected right to marry, and in doing so, imposes a substantial burden upon Plaintiff Cochran's constitutionally protected right to associate and to marry under the First and Fourteenth Amendments of the US Constitution.

3. The use of non published policies, and made-up requirement of criteria that are not clearly defined within established Policies, to deny Plaintiff Cochran and Ms. Lawrence their constitutionally protected right to associate, and to marry, violated the rights guaranteed under the First and Fourteenth Amendments of the US Constitution.

B. Issue an injunction ordering Defendants Ballard, Rubenstein, and Butcher to:

1. Immediately begin action to work with Plaintiff Cochran and Ms. Lawrence to find a course of action that will permit valid security measures to remain, while also permitting Plaintiff Cochran and Ms. Lawrence to further the marriage process.

2. Immediately make arrangements for Plaintiff Cochran and Ms. Lawrence to be able to continue and complete the marriage process, and finalize the marriage process.

C. In that monetary gain is not the intent of this action, to award any compensatory and punitive damages in amounts deemed fit and proper by the Court.

D. Grant any such other relief which the Court may deem that the Plaintiff is entitled to.

(ECF No. 44 at 10-11). Plaintiff claims that while Defendants are attempting to improperly circumscribe the relief he seeks to his request for monetary damages, it is "abundantly clear" that he also seeks declaratory and injunctive relief. (*Id.* at 11). Plaintiff takes issue with Defendants' refusal of his offer "to find an amicable resolution to these matters," in their January 26, 2019 letter, which Plaintiff believes makes Defendants' "real and true intentions abundantly clear." (*Id.* at 9, 11). Plaintiff argues that dismissal at this stage is inappropriate because authorization to marry Ms. Lawrence "in no way excuses the actions perpetrated by the Defendants." (*Id.* at 12).

Plaintiff further argues that while Defendants may have granted his request to marry initially, there is no guarantee the approval will not be rescinded once their request to dismiss is granted. (*Id.*). Plaintiff asserts that it would be improper for this Court to accept Defendants' assurances that Plaintiff will be permitted to marry without concrete proof. (*Id.* at 12-13). Plaintiff accordingly asks this Court to deny Defendants' motion to dismiss. (*Id.* at 13).

On April 22, 2019, Defendants issued a Reply to Plaintiff's Response in Opposition. (ECF No. 45). Defendants reiterate their position that as this Court dismissed Plaintiff's

claims for monetary damages, their approval of Plaintiff's marriage request grants Plaintiff all the relief to which he is entitled. (*Id.* at 3). Defendants contend that Plaintiff's requests for declaratory judgment and further unspecified requests for injunctive relief are not sufficient to save his claim from being moot as there is no longer any live "case or controversy" as required by Article III of the United States Constitution. (*Id.* at 3-4). Defendants further argue that this case is not subject to the "voluntary cessation" doctrine cited by Plaintiff, as the allegedly wrongful conduct has ceased and could not be reasonably expected to recur. (*Id.* at 5-6). To that end, Defendants note that they have explicitly granted authorization for Plaintiff to marry Ms. Lawrence, and that it is exceedingly unlikely he would in the future again be barred by DOC regulations in an attempt to marry a different former employee of the DOC. (*Id.* at 6).

## II.    <u>Standard of Review</u>

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1) on the basis that Plaintiff's complaint is now moot. A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg &*

*Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the plaintiff, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*, No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases). Here, Defendants are bringing a factual challenge to this Court's jurisdiction over Plaintiff's complaint, alleging that subsequent developments have removed the factual basis for jurisdiction. As such, this Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See L.K. ex rel. Henderson v. N. Carolina State Bd. of Educ.*, No. 5:08-CV-85-BR, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011), *report and recommendation adopted*, No. 5:08-CV-00085-BR, 2011 WL 861154 (E.D.N.C. Mar. 9, 2011).

## III. __Discussion__

As a prerequisite to the exercise of federal jurisdiction, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the

federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Action by a defendant that simply accords all the relief demanded by the plaintiff may moot an action." *W. Virginia Highlands Conservancy v. Norton*, 161 F. Supp. 2d 676, 679 (S.D.W. Va. 2001) (citing 13A Federal Practice and Procedure § 3533.2). A case becomes moot, and accordingly no longer falls within the court's subject matter jurisdiction, when it is "impossible for a court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 567 U.S. 298, 307 (2012)).

There are two general exceptions to the mootness doctrine. First, federal courts are permitted to consider disputes which are moot if they are "capable of repetition, yet evading review." *Incumaa v. Ozmint*, 507 F.3d 281, 288–89 (4th Cir. 2007) (citing *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449 (2007)). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* at 289 (internal quotation marks and citations omitted).

Second, there is a well-recognized exception to the mootness doctrine which provides that "'a defendant's voluntary cessation of a challenged practice does not deprive

a federal court of its power to determine the legality of the practice.'" *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). [2] The voluntary cessation doctrine protects against the possibility that if a case is moot only because the defendant unilaterally ceased engaging in the allegedly wrongful conduct, he may be "free to return to his old ways" once the lawsuit has been terminated. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

Defendants' motion to dismiss requires the Court to consider the mootness argument in stages. First, the Court must determine whether Defendants' approval of Plaintiff's request to marriage moots his complaint, and second, if Plaintiff's complaint is in fact mooted by the granting of his request for marriage, whether the case is nonetheless subject to one of the exceptions. These issues will be considered in turn below.

### A. Mootness

As noted above, Plaintiff initiated this lawsuit on the premise that Defendants had acted unlawfully by refusing his requests to marry Ms. Lawrence. (ECF No. 1 at 8). Plaintiff initially sought both equitable and compensatory relief. (*Id.* at 16-17). However, this Court dismissed Plaintiff's claims for compensatory relief on December 27, 2018, leaving only Plaintiff's claims for declaratory and injunctive relief. (ECF No. 35). Defendants have since approved Plaintiff's request to marry Ms. Lawrence. (ECF Nos. 38-1 at 1; 39 at 3).

---

[2] *Porter v. Clarke* involved an appeal by the plaintiffs, alleging that the District Court had improperly dismissed their claim as moot. *See Porter v. Clarke*, 852 F.3d 358, 360 (4th Cir. 2017) (hereafter *Porter I*). The Fourth Circuit agreed with the plaintiffs that their claim was subject to the voluntary cessation exception and remanded the case. *see id.* The District Court subsequently found in favor of the plaintiffs and the defendants appealed the decision. On appeal, the Fourth Circuit again ruled in favor of the plaintiffs, holding that the District Court did not commit clear error by finding that the plaintiffs' claim was not rendered moot by the prison's policy change. *See Porter v. Clarke*, No. 18-6257, 2019 WL 1966780, at *12 (4th Cir. May 3, 2019) (hereafter *Porter II*).

### 1. As-applied challenge

Plaintiff is raising an as-applied challenge to Defendants' decision to deny his marriage request. In the PF&R responding to Defendants' first Motion to Dismiss, the undersigned noted that "the bulk of the arguments made by both parties focus on the unconstitutionality of the marriage restriction specifically imposed in Plaintiff's case," and consequently found that, "Plaintiff's claim is best understood as an 'as applied' challenge to the denial of his marriage request." (ECF No. 31 at 8 n.2). The undersigned further informed Plaintiff that if he wished to challenge the constitutionality of the policies governing inmate marriages generally, rather than as applied to him, he would need to clearly specify that he wished to do so. (*Id.* at 22).

Plaintiff does not argue that DOC Policy Directive 507.00 governing inmate marriages is unconstitutional, instead he argues that Defendants' actions were unlawful because they failed to correctly follow its mandates. (ECF No. 44 at 4). Moreover, while Plaintiff takes issue with Defendants' use of DOC Policy Directive 505.03, which forbids employees and ex-employees from visiting inmates, he is not arguing that the policy itself is unconstitutional. Instead, Plaintiff asserts that the application of the policy in his case is unconstitutional, because it effectively precludes his marriage to Ms. Lawrence. (ECF No. 1 at 14). The focus of the parties' legal arguments regarding the first motion to dismiss was not whether Defendants' security concerns and concomitant regulations governing former employees' ability to visit inmates *generally* was unconstitutional, it was whether those concerns, as applied specifically to Plaintiff, justified the infringement of Plaintiff's right to marriage. At multiple points in the pleadings, Plaintiff stated that his claim could be resolved by allowing Ms. Lawrence a one-time visit to the facility for the purposes of a marriage ceremony, or by permitting Plaintiff and Ms. Lawrence to marry by telephone.

(ECF Nos. 1 at 16; 28 at 14).

Accordingly, the undersigned **FINDS** that Plaintiff is not making a facial challenge to the relevant policies governing inmate marriage, but an as-applied challenge, as he is asserting that Defendants enforced the policies too inflexibly to his marriage requests, and their cited security concerns did not justify a wholesale refusal to grant the requests based on the specific circumstances of his case.

### 2. Injunctive relief

This Court has previously found that when an inmate files a lawsuit alleging that prison officials have unlawfully refused a request to marry, the approval of the request and subsequent marriage of the plaintiff will moot the case. *See Weldon v. Nohe*, No. 3:16-CV-03815, 2016 WL 8711520, at *3 (S.D.W. Va. Oct. 28, 2016), *report and recommendation adopted*, No. CV 3:16-3815, 2016 WL 7042931 (S.D.W. Va. Dec. 2, 2016), *aff'd*, 684 F. App'x 275 (4th Cir. 2017); *see also Williams v. Shettle*, 914 F.2d 260 (7th Cir. 1990) (prison's acceptance of inmate's marriage request mooted request for injunction to permit marriage). The injunctive relief requested by Plaintiff asked (1) that Defendants be ordered to "begin action to work with Plaintiff" so that he and Ms. Lawrence might be married while maintaining valid security measures, and (2) that Defendants be ordered to "[i]mmediately make arrangements for [Plaintiff] and Ms. Lawrence to be able to continue and complete the marriage process..." As Defendants have affirmatively approved Plaintiff's marriage request, and informed Plaintiff that he and Ms. Lawrence will be permitted to marry as soon as they complete the administrative marriage request process, Plaintiff's injunctive requests effectively have been granted.

Therefore, the undersigned **FINDS** that Plaintiff's claim for injunctive relief has been rendered moot by Defendants' approval of Plaintiff's marriage request and

16

restoration of Ms. Lawrence's visiting rights for the limited purpose of attending the marriage ceremony.

### 3. Declaratory relief

Plaintiff argues that his complaint is not moot as he requested equitable relief beyond a mere injunction ordering Defendants to allow him to marry Ms. Lawrence. (ECF No. 44 at 10). Plaintiff argues that in addition to a request for injunctive relief, he requested several declaratory judgments stating that Defendants acted unlawfully and violated Plaintiff's constitutional rights in denying his requests to marry. (*Id.* at 10-11). Given that the declaratory relief sought by Plaintiff is not available, he is mistaken in assuming that his request for such relief preserves the "live controversy" that existed at the time the complaint was filed.

The procedures for obtaining a declaratory judgment are governed by Federal Rule of Civil Procedure 57 and the Declaratory Judgment Act as codified by 28 U.S.C. § 2201. *See* Fed. R. Civ. P. 57; 28 U.S.C. § 2201. Section 28 U.S.C. § 2201(a), provides that "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The purpose of the Declaratory Judgment Act is to "allow[ ] the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir.1998). "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation." *The Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008) (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 593–94 (4th Cir. 2004)).

As declaratory judgments are designed to allow parties to mitigate risk from future conduct they are "an inherently forward-looking mechanism, intended to guide parties' behavior in the future." *Merino v. EMC Mortg. Corp.*, No. CIV.A 1:09-CV-1121, 2010 WL 1039842, at *4 (E.D. Va. Mar. 19, 2010). As a result, courts have generally found that it is not an appropriate exercise of the power conferred by the Declaratory Judgment Act to pronounce past actions illegal if the conduct is no longer ongoing. In *Green v. Mansour*, 474 U.S. 64 (1985), the Supreme Court of the United States ("Supreme Court") considered class action law suits alleging that a state agency's calculations of benefits under the federal Aid to Families With Dependent Children program violated certain provisions of federal law. 474 U.S. at 65. The Supreme Court granted review to decide, among other issues, whether it was appropriate for federal courts to "issue a declaratory judgment that state officials violated federal law in the past when there is no ongoing violation of federal law." *Id.* at 67. The Supreme Court agreed with the decisions of the lower courts that an intervening change in federal law rendered both plaintiffs' requests for injunctive relief, as well as their request for a declaratory judgment, moot. *Id.* at 67, 74. The Supreme Court found that, as injunctive relief was no longer available, "a declaratory judgment that respondent violated federal law in the past" was unable to "stand on its own feet as an appropriate exercise of federal jurisdiction." *Id.* at 74.

The Fourth Circuit has likewise considered the propriety of a declaratory judgment that pronounces the past actions of government agents unlawful. *See LaFaut v. Smith*, 834 F.2d 389, 390 (4th Cir. 1987). In *LaFaut,* the plaintiff, a former federal inmate, alleged that prison officials had violated the Rehabilitation Act of 1973 as well as the Eighth Amendment prohibition against cruel and unusual punishment by failing to adequately accommodate his disabilities. 834 F.2d at 390. The Fourth Circuit concluded

that while the plaintiff "may have derived some satisfaction from the entry of the declaratory judgment" in his favor, the fact that the case was moot at the time of judgment due to the plaintiff's release from prison meant that the district court lacked the jurisdiction to enter a declaratory judgment stating that the prison officials' prior actions had violated federal law. *Id.* at 394-95. In accordance with these precedents, courts in this circuit have routinely found it inappropriate to issue a declaratory judgment stating that government agents' past actions violated the law, absent continuing allegedly wrongful conduct. *See Griffin v. Cellman*, No. CV 0:17-00152-MGL, 2018 WL 1443948, at *2 (D.S.C. Mar. 22, 2018), *aff'd*, 748 F. App'x 521 (4th Cir. 2019) ("[The plaintiff] appears to be seeking a declaration [d]efendants violated the Constitution. This type of declaratory judgment—seeking a holding [d]efendants' past actions violated federal law without any claim of continuing violation—is barred."); *see also Davis v. Davenport*, No. CA 1:12-3056-JFA-JRM, 2013 WL 6840473, at *6 (D.S.C. Dec. 27, 2013) ("Thus, to the extent [p]laintiff seeks a declaration that [d]efendants' past behavior constituted a violation of his rights, [p]laintiff is not entitled to such relief."); *Int'l Coal. for Religious Freedom v. State of Maryland*, 3 F. App'x 46, 49 (4th Cir. 2001) ("We are thus certain that a declaratory judgment that the state violated—or did not violate—the law in the past cannot stand on its own, and would be voided by the Eleventh Amendment, even if it were useful to the parties in some sense."); *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *3 (W.D. Va. Feb. 19, 2014) ("Consequently, a declaration that the [defendant's] decision was improper would involve an adjudication of past conduct, which does not satisfy the requirements of a declaratory judgment action.") (internal quotations and citations omitted).

In the complaint, Plaintiff alleges that state government officials violated the law by denying his requests to marry Ms. Lawrence. (ECF No. 1 at 8). Plaintiff's request has now been approved. Accordingly, there is no ongoing violation of federal law as the conduct of which Plaintiff complains has ceased. According to binding precedent, the Court's entry of a declaratory judgment stating that the past actions of the state government officials violated Plaintiff's rights would not be a proper exercise of federal jurisdiction. Therefore, Plaintiff's argument that his case is not moot due to his request for declaratory relief is unavailing.

Plaintiff argues that Defendants' belated authorization of his request "in no way excuses the actions perpetrated by the Defendants." (ECF No. 44 at 12). However, this misinterprets the role federal courts play in disputes. This Court's role is not to sit in judgment, either excusing or condemning Defendants' actions in the abstract; rather, it is to create remedies for violations of federal law. As Plaintiff has received all the relief to which he is entitled, this Court has no further role to play. *See Incumaa* 507 F.3d at 289 ("[T]he Constitution forbids us from pontificating about abstractions in the law or merely giving advice about the potential legal deficiencies of a law or policy when no ongoing controversy exists with respect to that law or policy.").

As an award of declaratory judgments in Plaintiff's favor is not an appropriate exercise of this Court's jurisdiction, the undersigned **FINDS** that Plaintiff's claims for declaratory relief do not create a continuing valid controversy allowing the exercise of federal jurisdiction.

### 4. Other relief

Finally, Plaintiff requests "any such other relief which the Court may deem that the Plaintiff is entitled to." (ECF No. 1 at 17). Considering that Plaintiff's complaint is focused

on the legal harm caused by Defendants' denial of his marriage requests, and that this Court has already excluded the possibility of monetary compensation, the only relief to which Plaintiff would be entitled is an injunction ordering Defendants' to permit his marriage with Ms. Lawrence. As Defendants have already done so, Plaintiff's case is moot.

Accordingly, the undersigned **FINDS** that Plaintiff's claim is moot and should be dismissed unless it is subject to an exception to the mootness doctrine.

### B. Exceptions to Mootness

### 1. Voluntary cessation

Plaintiff argues that simply because Defendants have currently authorized his marriage to Ms. Lawrence, this "in no way offers any real assurances that such authorization will remain once the Defendants are given their way, and the matter is disposed of." (ECF No. 44 at 12). Plaintiff believes the case is not moot because Defendants may rescind their approval of his marriage request once the lawsuit is dismissed. (*Id.*). In support of his argument, Plaintiff notes that federal case law establishes that the mere voluntary cessation of allegedly illegal conduct does not inevitably moot a case. (*Id.* at 12-13) (citing *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260 (9th Cir. 1998)).

Plaintiff is correct that there is a long-recognized exception to the mootness doctrine which provides that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).

21

The exception "seeks to prevent a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Porter I*, 852 F.3d at 364 (citations and quotations omitted).

Even when a case has been rendered moot due purely to the voluntary cessation of the challenged activity by the defendant, "[t]he case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *Justice,* No. 2:17-CV-03681, 2018 WL 4291744, at *4 (quoting *Grant,* 345 U.S. at 633). When a defendant unilaterally discontinues the challenged conduct, "a party seeking injunctive relief must demonstrate that such relief is needed, meaning that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Porter II*, No. 18-6257, 2019 WL 1966780, at *11 (quotations and citations omitted). "The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth,* 528 U.S. at 189.

The Supreme Court has found that a defendant meets this burden if she enters into an "unconditional and irrevocable" agreement that prohibits her from again engaging in the challenged activity. *See Already, LLC v. Nike, Inc.,* 568 U.S. 85, 93 (2013). The Fourth Circuit has likewise found that a government agency's change of policy has rendered a challenge to it moot where the government "has not asserted its right to enforce [the challenged policy] at any future time." *Porter I,* 852 F.3d at 364 (quoting *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1231 (4th Cir. 1989)). By contrast, the Fourth Circuit has refused to find a claim moot in the prison litigation context merely because the defendant ceased enforcing a challenged policy where the defendant "refused to commit to keep the revised policies in place and not revert to the challenged practices." *Id.* at 365.

22

Defendants argue that they are not subject to this exception because "[t]he granting of Plaintiff's request to marry is a subsequent event that makes it absolutely clear that the allegedly wrongful conduct could not reasonably be expected to recur." (ECF No. 45 at 6). To this end, Defendants argue that as Plaintiff is unlikely to again request to marry a different but similarly situated former employee, it is clear that the alleged conduct could not be expected to recur. (*Id.*). This misinterprets Plaintiff's concern, however, which is not that he will be rebuffed by Defendants if he at a later date attempts to marry a *different* former employee of the institution, but that Defendants will revoke their *current* approval of his marriage request and again deny his marriage based on the same justification if the lawsuit is dismissed. (ECF No. 44 at 12). Whether or not Defendants unilateral decision to cease the challenged conduct and grant Plaintiff's request is subject to the voluntary cessation exception depends on whether Defendants have shown that it is not reasonably likely they will revoke their approval of Plaintiff's marriage with Ms. Lawrence, not with some unidentified third party.

The Fourth Circuit recently considered the voluntary cessation doctrine when it examined whether prison officials' rescission of a challenged policy mooted the claims of death row inmates who alleged the conditions of their confinement resulted in cruel and unusual punishment in violation of the Eighth Amendment. *See Porter I,* 852 F.3d at 360. The Fourth Circuit determined that the voluntary abandonment of the challenged policies and adoption of new rules governing the conditions of confinement for death row inmates, did not moot the lawsuit as the defendants "(1) retain[ed] the authority and capacity to return to the challenged policies, (2) refuse[d] to promise[ ] not to resume the prior practice, and (3) ha[d] suggested circumstances may require re-imposing the challenged policies." *Porter I*, 852 F.3d at 366 (internal markings omitted).

In a similar case, the Fourth Circuit determined that prison officials' abandonment of an earlier policy, conditioning religious accommodations on prisoners' possession of physical indicia of faith, did not moot a claim challenging the legality of the abandoned policy. *See Wall v. Wade*, 741 F.3d 492, 494 (4th Cir. 2014). The Fourth Circuit found it significant that there was nothing in the memo rescinding the policy to suggest that the prison was "actually barred—or even considers itself barred—from reinstating the [challenged policy] should it so choose." *Wall*, 741 F.3d at 497.

In contrast to the above cases, the Fourth Circuit has been more hesitant in applying exceptions to the mootness doctrine when a prisoner is not arguing that a rescinded or abandoned policy itself is unconstitutional but, rather, that the prior *application* of a concededly valid policy or practice was unconstitutional as employed in the plaintiff's specific case. In *Incumaa*, 507 F.3d at 281, the plaintiff raised an as-applied challenge to a publication ban that barred Maximum Security Unit ("MSU") inmates from receiving publications via the mail. *See* 507 F.3d at 282. The Fourth Circuit determined that, notwithstanding the plaintiff's voluntary cessation challenge, the case was mooted by his release from the MSU. *See id.* at 288. The Fourth Circuit found the plaintiff's argument that the prison could rescind his release from the MSU at any time and place him back in the higher security unit as soon as the specter of the lawsuit passed to be unpersuasive, as it was clear that if the plaintiff were to return to the MSU it would be due to his own actions in violating prison rules, not those of the defendants. *Id.*

Similarly, in *Williams v. Ozmint*, 716 F.3d 801 (4th Cir. 2013), the Fourth Circuit found that a plaintiff's claim based on the suspension of his visiting privileges was mooted by the restoration of the visiting privileges. *See* 716 F.3d at 810. The *Williams* Court rejected the plaintiff's "speculation" that prison officials would again suspend his visiting

privileges following the termination of the lawsuit, despite the fact that prison officials did still concededly retain the ability to suspend his visiting privileges. *See id.* at 809-10. This Court has recognized the disparate approach taken by the Fourth Circuit when applying the voluntary cessation doctrine to a challenged policy, as opposed to the discrete application of a generally valid policy. *Justice*, No. 2:17-CV-03681, 2018 WL 4291744, at *5 (noting that "courts traditionally apply the voluntary cessation exception to cases where the plaintiff's injury resulted from a wrongfully established policy or common practice.").

The instant action is more similar to those in *Williams* and *Incumaa,* than *Wall* and *Porter*. While the claim is based on Plaintiff's right to marriage, it is centered on the application of prison visitation policies which operated to bar Plaintiff's marriage to Ms. Lawrence given that, under West Virginia law, the two parties must be physically present in order to effectuate a valid marriage. (ECF No. 31 at 21-22). Defendants have since restored Ms. Lawrence's visiting privileges, if only for a one-time special visit for the purposes of the marriage ceremony. (ECF No. 38-1 at 1). While Plaintiff speculates that Defendants may remove this authorization following the termination of the lawsuit, he does not seriously contest that Defendants have in fact granted it. (ECF No. 44 at 12). Indeed, Plaintiff attaches documents in his pleadings that affirm Defendants' assertions they have informed Plaintiff Ms. Lawrence's visitation rights have been restored for the purposes of a marriage ceremony. (ECF No. 44-1 at 3-4).

While this case is not a pure visitation rights case, the restoration of Ms. Lawrence's visitation rights for the purposes of marriage effectively resolves Plaintiff's claim, a fact recognized by Plaintiff in his prior pleadings wherein he repeatedly faulted Defendants for not recognizing that his marriage could be completed by allowing a one-time visit.

(ECF Nos. 1 at 16; 28 at 14). As noted above, the Fourth Circuit has recognized that restoration of visiting rights generally moots a claim based on their denial, although the defendant may retain the theoretical right to again rescind the right. *See Williams,* 716 F.3d at 809 ("[The plaintiff] already has received the restoration of his visitation privileges that he requested in his complaint. Accordingly, his claim for injunctive relief is moot."). Other courts have come to similar conclusions. *See Martin v. Snyder*, 329 F.3d 919, 920 (7th Cir.2003) (inmate's claim for injunctive relief was mooted when the warden reinstated her challenged visitation privileges); *see also Garcia v. Hinkle*, No. 7:13CV00585, 2014 WL 3778536, at *3 (W.D. Va. July 30, 2014) ("The court can offer no effectual relief to [the plaintiff]; he has requested injunctive relief as his sole remedy, and prison officials have already restored [the plaintiff's] visitation privileges."); *White v. Keller*, 438 F. Supp. 110, 113 (D. Md. 1977), *aff'd,* 588 F.2d 913 (4th Cir. 1978) (class action plaintiffs' claims for equitable relief were mooted when visitation rights restored).

Defendants have alleged both in pleadings before this court, as well as in letters through counsel to Plaintiff, that they have no intention of arbitrarily rescinding their approval of Plaintiff's marriage request and limited restoration of Ms. Lawrence's visiting rights. (ECF Nos. 38-4 at 2; 39 at 5; 45 at 5). Therefore, unlike in *Wall* and *Porter,* Defendants have not refused to concede that they will not return to the challenged action. *See Porter I*, 852 F.3d at 366; *Wall*, 741 F.3d at 497. Furthermore, in cases that rest on the restoration of privileges, both visiting and otherwise, courts in the Fourth Circuit have generally found that it is not reasonably likely the defendants will arbitrarily rescind the restoration of the privileges following termination of the lawsuit if they did not act arbitrarily in removing the privileges in the first instance. *See Incumaa,* 507 F.3d at 289 ("There is no evidence in the record that the [defendant] arbitrarily places inmates in the

MSU."); *See also Williams*, 716 F.3d at 809 (challenged action not likely to recur as initial deprival was not arbitrary); *Garcia*, No. 7:13CV00585, 2014 WL 3778536, at *3 ("Because it is apparent that [the plaintiff's] visitation privileges were not arbitrarily suspended, [the plaintiff's] argument that these circumstances may recur rests on mere speculation.").

Defendants' initial decision to deny visitation rights to Ms. Lawrence was not arbitrary as it was based on a generally applicable policy that forbade former employees from visiting with inmates, as well as Ms. Lawrence's prior violation of prison regulations on the behalf of Plaintiff. (ECF No. 31 at 4-5). While this Court recognized in ruling on Defendants' first motion to dismiss that, at least when viewing the case in the light most favorable to Plaintiff, this justification may not have been strong enough to overcome Plaintiff's fundamental right to marry, it was not an arbitrary or entirely groundless decision. (*Id.* at 22). Therefore, as the restoration of Ms. Lawrence's visitation rights for the purposes of a marriage ceremony effectively resolves Plaintiff's claim, Plaintiff's speculation that the right may again be rescinded does not serve to refute Defendants' contention that Ms. Lawrence's limited restored visitation rights will not be arbitrarily revoked.

While it is theoretically true that Defendants could revoke their voluntary cessation of the challenged practice and rescind either Ms. Lawrence's limited restored visiting rights, or the approval of Plaintiff's marriage request, the undersigned concludes that Defendants have met their "heavy burden" of showing that the "challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189. Defendants have repeatedly asserted in statements through counsel, as well as in pleadings before this Court, that the authorization of Plaintiff's marriage request is genuine and all that remains for Plaintiff to do is to comply with the administrative

procedures applicable to all inmates arranging a marriage. (ECF Nos. 38-4 at 2; 39 at 5; 45 at 5). The Fourth Circuit has previously found that "formal assurances" by the defendants alone were sufficient to establish that it was not reasonably likely the challenged conduct would recur, at least when there was "no hint" from the record that the defendants had any indication of restarting the challenged activities as soon as the lawsuit was dismissed. *See Grutzmacher v. Howard Cty.,* 851 F.3d 332, 349 (4th Cir.), *cert. denied sub nom.,* 138 S. Ct. 171 (2017) (citing *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1284–85 (11th Cir. 2004)); *see also Winsness v. Yocom,* 433 F.3d 727, 736 (10th Cir. 2006) (dismissing case as moot where defendants asserted they would not engage in challenged conduct again "and the [p]laintiffs have provided nothing but speculation" in opposition); *but see Porter II,* No. 18-6257, 2019 WL 1966780, at *11 (statements by prison officials that they did not have the "present *intent*" to return to challenged policies insufficient where they refused to expressly "forswear" returning to the policies at a later date) (emphasis original). As in *Grutzmacher*, beyond speculating that Defendants will rescind their authorization if the lawsuit is dismissed, Plaintiff does not provide "any evidence to the contrary" of Defendants' formal statements. 851 F.3d at 349.

Further supporting Defendants argument that the case is moot is the fact that the relief was first offered to Plaintiff over five months ago, on December 3, 2018. (ECF No. 38-1 at 1). Plaintiff was told at that time that in order to marry Ms. Lawrence all he had to do was comply with the general administrative procedural requirements governing inmate marriages. (*Id.*). When Plaintiff later asked for clarification regarding Defendants' approval of his marriage request, he was again informed that if he wished to marry Ms. Lawrence he must simply follow the remaining steps in the administrative process. (ECF

No. 38-4 at 2). The administrative process requires inmates desiring marriage to, among other requirements, pay for the expenses of the marriage, arrange the services of a person legally qualified to perform marriages in West Virginia, and comply with any requirements as imposed by the chosen marriage officiator. (ECF No. 38-1 at 3).

More than five months have elapsed since Defendants first informed Plaintiff that he could marry Ms. Lawrence. During these five months, Defendants have not made any effort to revoke their approval of Plaintiff's marriage request. If Plaintiff and Ms. Lawrence had simply married during this time, the lawsuit would certainly be moot. *See Weldon,* No. 3:16-CV-03815, 2016 WL 8711520, at *3. The fact that Plaintiff has chosen not to take advantage of the relief offered voluntarily by Defendants does not suffice to prevent the case from being moot indefinitely. Indeed, this case does not present the typical situation in which the voluntary cessation doctrine is applicable, because Plaintiff could receive final and irrevocable relief, rendering the specter of later revocation null, if he would only avail himself of the remedy offered by Defendants.

Under the present circumstances, for this Court to oversee the case to trial would serve only to waste limited judicial resources for the pointless exercise of ordering Defendants to do what they have already voluntarily done. Other courts that have considered analogous prison litigation cases have not found a plaintiff's refusal of relief offered by the defendants to constitute sufficient grounds to render a case subject to the voluntary cessation exception when the plaintiff could achieve complete relief merely by accepting the proffered remedy. *See Wade v. Dir. of Nursing, Miami Corr. Facility,* No. 3:12CV554, 2014 WL 4494317, at *4 (N.D. Ind. Sept. 10, 2014) ("Additionally, it is clear that [the plaintiff's] request for injunctive relief is moot. [The plaintiff] seeks dental treatment for the tooth he chipped when he bit into a screw ... The dentist offered to

smooth out the tooth that was chipped, but [the plaintiff] declined…"); *see also Weatherspoon v. Sparkman*, No. 4:12CV119-MPM-DAS, 2014 WL 5335940, at *3 (N.D. Miss. Oct. 20, 2014) (dismissing the plaintiff's religious liberty claim "[a]s he refused to avail himself of an accommodation that would afford him full opportunity to observe his faith and its practices").

Defendants have succeeded in establishing "that there is no reasonable expectation that the wrong will be repeated." *Justice*, No. 2:17-CV-03681, 2018 WL 4291744, at *4 (quoting *Grant*, 345 U.S. at 633). While Defendants could theoretically reverse course and revoke Ms. Lawrence's limited visiting rights or their approval of Plaintiff's marriage request, there is no indication they will do so beyond Plaintiff's unsupported speculation. To the contrary, Plaintiff has held the power to prevent such an outcome for the past five months by proceeding to marry Ms. Lawrence. Plaintiff cannot create a legitimate, live controversy by arbitrarily rejecting the relief he originally sought in his complaint. Thus, Plaintiff has not shown that relief is necessary because there is "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Porter II*, No. 18-6257, 2019 WL 1966780, at *11.

Accordingly, the undersigned **FINDS** that the voluntary cessation exception is not applicable to this case.

### 2. Capable of repetition yet evading review

While Plaintiff only directly raises the voluntary cessation doctrine in defense of his claim that his case is not moot, the undersigned will briefly consider whether the "capable of repetition yet evading review" exception applies to this case. Lawsuits which raise claims that are "capable of repetition, yet evading review," are subject to an exception to the general doctrine that moot cases should not be heard in federal court.

*See Incumaa,* 507 F.3d at 288–89 (citation omitted). However, this doctrine is only applicable in an "exceptional situation" where the challenged action is likely to be repeated, and due to "the inherently short duration of the opportunity for remedy," the claim "is likely forever to 'evad[e] review.'" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990). The party advocating for the exception to the mootness doctrine bears the burden of demonstrating that the exception applies. *Incumaa,* 507 F.3d at 289 (citing *Brooks v. Vassar,* 462 F.3d 341, 348 (4th Cir. 2006)).

Perhaps the paradigmatic example of a claim that is "capable of repetition yet evading review" is one that challenges the application of a law affecting pregnancy. *See Roe v. Wade*, 410 U.S. 113, 125 (1973). Without the application of the exception, it would be practically impossible for a plaintiff to proceed through appellate review before the termination of her pregnancy made the case moot. *Id.* The doctrine has been similarly invoked to allow a plaintiff to challenge durational residential requirements for voter registration where, without application of the exception, the case would be mooted by the plaintiff attaining the durational requirement while the case was pending. *See Dunn v. Blumstein*, 405 U.S. 330, 333 n.2 (1972).

Plaintiff's claim does not present such a case. As the undersigned has concluded above that Defendants met their burden in establishing that the challenged action is not reasonably likely to recur under the voluntary cessation exception, Plaintiff is certainly not able to show that the challenged action is likely to be repeated when the burden to do so has been shifted to him. Furthermore, the claim raised by Plaintiff does not exhibit "the inherently short duration of the opportunity for remedy," contemplated by this exception. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990). There is nothing inherent in the request for marriage approval that makes it likely to, as a matter of course, become moot

before effective judicial scrutiny can be applied to the claim.

Therefore, the undersigned **FINDS** that Plaintiff's case is not subject to the "capable of repetition yet evading review" exception to the general mootness doctrine. As none of the relevant exceptions to the mootness doctrine apply to Plaintiff's case, the undersigned further **FINDS** that Plaintiff's claim is moot because he has received all the relief to which he is entitled.

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion to Dismiss (ECF No. 38); **DISMISS** the complaint, **with prejudice**, (ECF No. 1); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140

(1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, Defendant, and any counsel of record.

**FILED:** May 8, 2019

Cheryl A. Eifert
United States Magistrate Judge